## LIFE & CASUALTY INSURANCE CO. OF TENNESSEE *v.* McCRAY.

No. 89. Argued February 5, 1934.—Decided March 5, 1934.

*Mr. Moreau P. Estes,* with whom *Messrs. P. M. Estes* and *Myron T. Nailling* were on the brief, for appellant.

*Messrs. Joseph M. Hill* and *Henry L. Fitzhugh* submitted for appellee.

Mr. Justice Cardozo delivered the opinion of the Court.

On March 3, 1930, the appellant, an insurance company, issued to Jonas McCray a policy of life insurance for $500

payable to his wife, the appellee in this court. The policy lapsed in June, 1931, for non-payment of a premium within the period of grace, but in August, 1931, it was reinstated with the company's consent. On May 10, 1932, the insured committed suicide. If suicide occurred within a year from the date of issue of the policy, the insurer's liability was limited to a return of any premiums paid by the insured. If suicide occurred after the expiration of the year, the liability was the same as upon a death from other causes. The appellee made proof of claim against the insurer, insisting that the year was to be calculated from the original date of issue. The company refused payment upon the ground that the year was to be calculated from the time of reinstatement. Judgment went against the insurer in the trial court, and again, upon appeal, in the Supreme Court of the State. 187 Ark. 49; 58 S.W. (2d) 199. The controversy here grows out of the amount of the recovery. To the face of the policy with interest at six per cent there were added certain statutory allowances, which are contested in this court. One of the additions was an attorney's fee of $200 ($100 for the trial and $100 for the appeal). The other was an award of twelve per cent computed on the payments due under the contract. These increments are authorized by a statute of Arkansas which is quoted in the margin.[1] The

---

[1] Section 6155, Digest of the Statutes of Arkansas (Crawford & Moses, 1921): "In all cases where loss occurs, and the fire, life, health, or accident insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of such loss, twelve per cent. damages upon the amount of such loss, together with all reasonable attorneys' fees for the prosecution and collection of said loss; said attorneys' fees to be taxed by the Court where the same is heard on original action, by appeal or otherwise and to be taxed up as a part of the costs therein and collected as other costs are or may be by law collected."

insurer contests the validity of the statute, insisting that it is condemned by the Fourteenth Amendment. The case is here upon appeal.

1. The Fourteenth Amendment does not prohibit the award of an attorney's fee, moderate in amount, when payment of a policy of life insurance has been wrongfully refused.

We assume in accordance with the assumption of the court below that payment was resisted in good faith and upon reasonable grounds. Even so, the unsuccessful defendant must pay the adversary's costs, and costs in the discretion of the lawmakers may include the fees of an attorney. There are systems of procedure neither arbitrary nor unenlightened, and of a stock akin to ours, in which submission to such a burden is the normal lot of the defeated litigant, whether plaintiff or defendant. The taxing master in the English courts may allow the charges of the barrister as well as the fees of the solicitor.[2] Nothing in the Fourteenth Amendment forbids a like procedure here. The assurance of due process has not stereotyped bills of costs at the rates known to the Fathers. *Chicago & N. W. Ry. Co.* v. *Nye Schneider Fowler Co.*, 260 U.S. 35; *Dohany* v. *Rogers*, 281 U.S. 362, 368. Nor is there an unjust discrimination, an arbitrary denial of the equal protection of the laws, in laying the burden on insurers and not on all defendants. Diversity of treatment in respect of the costs of litigation has its origin and warrant in diversity of social needs. *Dohany* v. *Rogers, supra.* Dependents left without a breadwinner will be exposed to sore distress if life insurance payments are extracted slowly and painfully, after costly contests in the courts. Health and accident insurance will often be

---

[2] The practice under the law of England is explained clearly and fully by Arthur L. Goodhart in the article " Costs " in his " Essays in Jurisprudence and the Common Law," pp. 190, 198–201, first published in 38 Yale L.J. 849.

the sources from which the sick and the disabled are to meet their weekly bills. Fire insurance moneys, if withheld, may leave the business man or the householder without an office or a home. Classification prompted by these needs is not tyrannical or arbitrary. As to that, the judgments of this court in situations precisely apposite have set a closure to debate. *Fidelity Mutual Life Assn.* v. *Mettler*, 185 U.S. 308; *Iowa Life Ins. Co.* v. *Lewis*, 187 U.S. 335; *Farmers & Merchants Ins. Co.* v. *Dobney*, 189 U.S. 301.

2. The Fourteenth Amendment does not prohibit a fixed award of damages, moderate in amount, in addition to the costs and the fees of the attorney, when the payment of a policy of life insurance has been wrongfully refused.

The appellant concedes that such an allowance is permissible when the refusal to pay is wanton or malicious. *Fraternal Mystic Circle* v. *Snyder*, 227 U.S. 497. The argument is that the allowance is to be condemned as a denial of due process when the defense is in good faith and on grounds not wholly frivolous. We find a different meaning in the Constitution and the precedents. The same social needs that sustain the award of an attorney's fee when payment is resisted, sustain in like circumstances an increment to the policy within the bounds of moderation. This is not a case where the increment has been authorized after the writing of the policy. The statute was enacted in 1905, and the insurance was written in 1930. Here at the delivery of the policy, the insurer was informed that if it failed to make payment in accordance with its contract, " twelve per cent damages " would be owing to the insured. We discover nothing arbitrary or oppressive in imposing such a contract upon the business of insurance, a business subject, as all agree, to control and regulation. *Hardware Dealers Mut. Fire Ins. Co.* v. *Glidden Co.*, 284 U.S. 151; *O'Gorman & Young* v. *Hart-*

*ford Fire Ins. Co.,* 282 U.S. 251. There has been no failure to give heed to "the rudiments of fair play" (*Chicago, M. & St. P. Ry. Co.* v. *Polt,* 232 U.S. 165, 168), as there was in *St. Louis, I. M. & S. Ry. Co.* v. *Wynne,* 224 U.S. 354, where the damages were imposed though the insured had rejected a tender of what was due and had made demand for more, or in *Polt's* case (*supra*), a suit against a railroad for loss of property destroyed by fire where the damages were unliquidated and yet the recovery was to be doubled if the verdict exceeded by a penny what was offered by the wrongdoer. To nullify this statute the appellant must be able to show that an award of twelve per cent. is so extravagant in amount as to outrun the bounds of reason and result in sheer oppression. This we cannot bring ourselves to say in the face of a contrary finding by the framers of the statute, with all the presumptions of correctness attaching to their judgment. Still less can we bring ourselves to say it in the face of kindred statutes in force in other states.

The legislation now challenged is a sample of a type. Statutes very similar have been adopted in Texas, Arizona, Louisiana, and South Dakota. The Texas act, like this one, calls for damages of 12% in addition to attorney's fees. Texas Revised Civil Statutes, 1925, Art. 4736. In Arizona, the increment is as high as 15%, though it is limited to policies of insurance against fire. Arizona Revised Code, 1928, § 1828. In Louisiana, the percentage for fire policies is 12% and 25% for fire and theft losses affecting automobiles. Louisiana General Statutes, 1932, §§ 4179, 4246. In South Dakota there is an increment of 10%, confined to loss by fire. South Dakota Compiled Laws, 1929, § 9195.

These statutes and others not unlike them have been considered by this court without complaint or suggestion that the percentage was too high. Thus, in *Fidelity Mutual Life Assn.* v. *Mettler,* 185 U.S. 308, 325, 326,

the Texas statute was before us. Carried forward now into the revised codes, it was enacted for the first time in 1879. The attack upon its validity was confined to its discriminatory features, the burden being laid upon some forms of insurance, though inapplicable to others. This court upheld the act as valid, and in so doing repeated with apparent approval the ruling of the Supreme Court of Texas (86 Tex. 654; 26 S.W. 982) that the twelve per cent was given as damages for the failure to comply with the contract by payment, and the fee as compensation for the cost of collection. 185 U.S. at p. 325. During the half century and more in which the act has been in force, no one, it seems, has protested to any court that the percentage is immoderate. The same statute came before us again in *Iowa Life Ins. Co.* v. *Lewis, supra,* at p. 355. We renewed our approval, and said of our earlier opinion (*Fidelity Mutual Life Assn.* v. *Mettler*): "We are . . . entirely satisfied with the case and its reasoning." p. 355. Cf. *Farmers' & Merchants Ins. Co.* v. *Dobney, supra,* at p. 305. The presumption of validity which applies to legislation generally is fortified by acquiescence continued through the years. *Corn Exchange Bank* v. *Coler,* 280 U.S. 218; *Ownbey* v. *Morgan,* 256 U.S. 94.

The argument is made that the statutory percentage, though it might be legitimate as an award of damages, is illegitimate if intended as a penalty, a clog upon the privilege of access to the courts. The statute speaks of it as "damages." There are places here and there in the opinions of the Supreme Court of Arkansas where the word penalty is used. *Arkansas Insurance Co.* v. *McManus,* 86 Ark. 115, 124, 125; 110 S.W. 797; *Security Insurance Co.* v. *Smith,* 183 Ark. 254, 258; 35 S.W. (2d) 581; *Mutual Life Ins. Co.* v. *Marsh,* 185 Ark. 332; 47 S.W. (2d) 585. How little weight is to be given to this use is perceived when we discover that upon one page of an opinion the percentage is spoken of as a penalty and

on another page of the same opinion is described as an award of damages. See *Arkansas Insurance Co*. v. *McManus, supra*, with its quotation from *Seaboard Air Line Ry*. v. *Seegers*, 207 U.S. 73, 77. There is little doubt that the terms were thought of as equivalents.

The result will not be changed, however, though the increment to the judgment be classified as penal, if the amount is not immoderate. The measure, not the name, controls. The insurer is not penalized for taking the controversy into court. It is penalized (if penalty there is) for refusing to make payment in accordance with its contract, and penalized in an amount that bears a reasonable proportion to the loss or inconvenience likely to be suffered by the creditor. Repeated judgments of this court bear witness to the truth that such a tax upon default is not put beyond the pale by calling it a penalty. Thus, in *Yazoo & Mississippi Valley R. Co*. v. *Jackson Vinegar Co.*, 226 U.S. 217, the court had before it a Mississippi statute whereby a common carrier was required to settle claims within a stated time. If this was not done, there was to be a liability to the consignee for " twenty five dollars damages in each case, in addition to actual damages," whenever the amount of the claim was two hundred dollars or less. This court upheld the additional exaction though describing it as a penalty. The statute did no more than provide " a reasonable incentive for the prompt settlement without suit of just demands," and demands " of a class admitting of special legislative treatment." Cf. *Chicago, Milwaukee & St. Paul Ry. Co*. v. *Polt, supra*, p. 168. In *Seaboard Air Line Ry*. v. *Seegers, supra*, the penalty for delay was fifty dollars, and the court was not deterred by the label from enforcing the statute and adjudging its validity. There was approval of the statement of the court below that " the penalty, in case of a recovery in court " would operate " as a deterrent of the carrier in refusing to settle just claims,

and as compensation of the claimant for . . . trouble and expense." More recently, in *Chicago & N. W. Ry. Co.* v. *Nye Schneider Fowler Co., supra,* a statute of Nebraska prescribing the liability of carriers imposed a charge of seven per cent on the amount of the recovery as well as reasonable attorney's fees. We held that " a reasonable penalty " (pp. 43, 45) might be assessed against the wrongdoer as a stimulus to settlement without vexatious delay.

" Penalty " is a term of varying and uncertain meaning. There are penalties recoverable in vindication of the public justice of the state. There are other penalties designed as reparation to sufferers from wrongs. *Huntington* v. *Attrill,* 146 U.S. 657, 668; *Brady* v. *Daly,* 175 U.S. 148, 154, 157; *St. Louis, I. M. & S. Ry. Co.* v. *Williams,* 251 U.S. 63, 66; *Loucks* v. *Standard Oil Co.,* 224 N.Y. 99, 103; 120 N.E. 198.[3] One who refuses to pay when the law requires that he shall, acts at his peril, in the sense that he must be held to the acceptance of any lawful consequences attached to the refusal. It is no answer in such circumstances that he has acted in good faith. " The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." *Nash* v. *United States,* 229 U.S. 373, 377. Reparation may still be due, for all his good intentions, yet reparation within bounds. It is all " a question of more or less." *Sexton* v. *Kessler & Co.* 225 U.S. 90, 98. The price of error may be so heavy as to erect an unfair barrier against the endeavor of an honest litigant to obtain the judgment of a court. In that event, the Constitution intervenes and keeps the

[3] Often the recovery is fixed at an unvarying amount because of the difficulty of proving damages with accuracy in varying situations. *Brady* v. *Daly, supra; Chatterton* v. *Cave,* [1878] 3 App. Cas. 483, 492; *Cox* v. *Lykes Bros.,* 237 N.Y. 376, 379; 143 N.E. 226; *Calvin* v. *Huntley,* 178 Mass. 29, 32; 59 N.E. 435.

court room open. *Ex parte Young,* 209 U.S. 123; *Wadley Southern Ry. Co.* v. *Georgia,* 235 U.S. 651, 661, 662. On the other hand, the penalty may be no more than the fair price of the adventure. *St. Louis, I. M. & S. Ry. Co.* v. *Williams, supra,* p. 66. In that event, the litigant must pay for his experience, like others who have tried and lost.

3. Other objections affecting the merits of the recovery have been put before us by the appellant in briefs and in oral argument.

Our jurisdiction upon appeal from a judgment of a state court does not permit us to review them.

4. To the extent that *Standard Accident Ins. Co.* v. *Rossi,* 35 F. (2d) 667, and *Inter-Southern Life Ins. Co.* v. *McElroy,* 38 F. (2d) 557, are inconsistent with this opinion, we are unable to approve or follow them.

The judgment is

*Affirmed.*

MR. JUSTICE VAN DEVANTER, MR. JUSTICE SUTHERLAND, and MR. JUSTICE BUTLER dissent in respect of the 12% penalty or damages.